UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

BLACKBERRY CORPORATION, AND
CYLANCE INC., (D/B/A BLACKBERRY
CYLANCE),
    Plaintiffs,

    v.

KAYLAN BROWN COULTER,
    Defendant.

Docket No. 5:22-CV-98

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS ALL CLAIMS OR STAY PROCEEDING

Defendant Kaylan Coulter submits this Memorandum of Law in support of her Motion to Dismiss. As explained in detail below, Plaintiffs have failed to allege a plausible cause of action against Ms. Coulter, and all claims should therefore be dismissed for failure to state a claim. Alternatively, if the Court were to conclude that any claim has somehow been plausibly pleaded, the Court should stay any proceeding pending the completion of related litigation in California and the Vermont Superior Court.

## INTRODUCTION AND BACKGROUND

At first blush this case may appear to be a simple dispute between a business and a former employee arising from a confidentiality agreement. But this action is really just the latest sortie in an ongoing litigation campaign that has been launched by Plaintiffs – who are multi-billion dollar members of the mammoth cybersecurity industry – against a chief competitor, Sentinel Labs, Inc. ("Sentinel"), and several former employees who resigned their employment with Plaintiffs to join Sentinel.

1

Plaintiffs' litigation onslaught began over two-and-a-half years ago when they separately sued three former employees on the same day, October 17, 2019. Plaintiffs alleged that they had recently discovered that these former employees – Scott Scheferman, Timothy Mackie, and Chris Coulter (Ms. Coulter's husband) – were part of a "scheme" by Sentinel to "poach" employees. First Amended Complaint (filed Oct. 23, 2019) in *Blackberry Corporation et al. v. Chris Coulter et al.*, 953-10-19 Cncv, at ¶ 32 (attached as **Exhibit A**). In addition to these three original lawsuits, Plaintiffs sued several other former employees in various jurisdictions, and also ***sued Mr. Coulter again - twice - in Delaware***. *See* Memorandum in Support of Dismissal or Stay (filed Dec. 22, 2020) in *Blackberry Corporation et al. v. Chris Coulter et al.*, 953-10-19 Cncv, at 4-5 (attached as **Exhibit B**) (setting forth a history of Plaintiffs' oppressive litigation actions). Then, in January 2020, Plaintiffs filed their primary lawsuit against Sentinel itself and a number of "Doe" defendants (two of whom appear to be Mr. and Ms. Coulter) in Santa Clara County, California. In this lawsuit, Blackberry pled the very same "scheme" that it pled in the individual cases, alleging that, "Sentinel has orchestrated an ongoing and continuous scheme to raid Plaintiffs' chief talent with respect to Cylance products, services and customers." Complaint for Damages and Injunctive Relief (filed Jan. 16, 2020) in *Blackberry Corporation et al. v. Sentinel Labs, Inc. et al.*, 20-CV-361950 (Superior Court Santa Clara County, CA), at ¶ 34 (emphasis added) (attached as **Exhibit C**). *Compare id. with* First Amended Complaint in *Blackberry Corp. et al. v. Chris Coulter et al.*, 953-10-19 Cncv, at ¶ 32.

After Plaintiffs filed their primary suit against Sentinel in California, many of the satellite cases against former Blackberry Cylance employees in their individual capacities were stayed or otherwise disposed of, and the California case became the "main event." *See generally* Memorandum in Support of Dismissal or Stay in *Blackberry Corporation et al. v. Chris Coulter*

*et al.*, 953-10-19 Cncv, at 4-5. But the case against Mr. Coulter and Sentinel in Vermont, continued.[1] Although the Vermont Superior Court entered an order limiting the scope of discovery to matters that could not be raised or addressed in the California case, Plaintiffs continued to use the state court case to pursue overly broad and privileged categories of information, documents, ESI; they even demanded that Ms. Coulter's husband simply surrender his smart phone, his computer, and his data storage accounts so that Plaintiffs could "inspect" them whenever and however they wished. Mr. Coulter properly resisted these efforts, and the matter has since been the subject of a prolonged series of discovery disputes and motions in that case (although the Court denied Plaintiffs' effort to compel Mr. Coulter to surrender devices).

Not content to seek overly broad discovery from Ms. Coulter's husband, however, Plaintiffs then pursued Ms. Coulter herself through third party subpoenas. First, they served a subpoena for three years of Ms. Coulter's cell phone records with no effort to limit the scope of the subpoena to any particular issue. Then, after Ms. Coulter rebuffed Plaintiffs' request that she voluntarily surrender her cell phone, computer and accounts for forensic review, Plaintiffs served a second subpoena directed to Ms. Coulter demanding production of, *inter alia*, all of her electronic devices and data storage accounts, again without limit to any issues in the underlying case. When Ms. Coulter filed motions to quash these subpoenas, Plaintiffs retaliated by filing a motion to add Ms. Coulter as a co-defendant in the case against her husband. The Superior Court

---

[1] Unlike Ms. Coulter, her husband had signed a covenant not to compete. The Superior Court preliminarily enjoined Mr. Coulter from working for Sentinel for one year. Usually, the issuance of an injunction ends such disputes. In this case, however, Plaintiffs have refused to dismiss the case; instead, they appear to be using the case as a vehicle to pursue broad ongoing discovery (perhaps in aid of the California case).

properly denied Plaintiff's motion to add Ms. Coulter as a defendant and granted Ms. Coulter's motion to quash the subpoena seeking her devices and data.[2]

Because the Superior Court would not countenance Plaintiffs' oppressive subpoenas and would not permit Plaintiffs to add Ms. Coulter as a co-defendant, Plaintiffs filed the Complaint in this case as a separate action. Notably, the Complaint contains a request for "specific performance" that expressly seeks an order "that [Ms.] Coulter submit for inspection by Plaintiffs any computers, cellular telephones, cloud accounts, and storage devices." Complaint ¶ 49. This lawsuit is thus the apparent result of Plaintiffs' frustrated efforts to obtain harassing and overly burdensome discovery from Ms. Coulter related to its case against her husband.[3]

It is against this backdrop that Ms. Coulter is now required to expend time and resources in what can only be described as the next step in Plaintiffs' ongoing and relentless litigation campaign. But Plaintiffs' Complaint fails to assert a plausible claim. To the contrary, careful application of the law to the allegations in the Complaint shows that the claims lack merit as a matter of law. All of Plaintiffs' claims are conclusory and utterly lacking in factual support. As such, Ms. Coulter respectfully requests that the Court dismiss all the claims against her with prejudice for failure to state a claim upon which relief may be granted.

## PLAINTIFFS' ALLEGATIONS

Despite the length of the Complaint, Plaintiffs' actual allegations are remarkably thin. Essentially, the core facts alleged are the following.

---

[2] The Court also granted the motion to quash the cell phone records subpoena to the extent it exceeded the scope of actual issues in the case against Mr. Coulter. *See* Entry Order (entered Mar. 24) in *Blackberry Corporation et al. v. Chris Coulter et al.*, 953-10-19 Cncv (attached as **Exhibit D**).

[3] If Plaintiffs really thought that Ms. Coulter had done anything wrong, or that her employment with Sentinel would "inevitably" cause a breach of any legal obligations, then they would not have waited two and a half years to initiate this case. Rather, they would have sued her back when they sued the other former employees. The fact that this case was filed only after Plaintiffs suffered discovery setbacks in the case against Ms. Coulter's husband suggests that Plaintiffs are not pursuing these claims to vindicate a genuine legal wrong.

Ms. Coulter worked as Senior Manager Renewal Sales and as Director of Renewal Sales for Plaintiffs until September 20, 2019, when she resigned.[4] Complaint ¶¶ 2, 4. In this capacity, Ms. Coulter signed a confidentiality agreement and non-solicitation agreements. *Id.* ¶ 3. Ms. Coulter then accepted a job with Sentinel as Director of Global Renewals and began work at Sentinel on October 15, 2019.[5] *Id.* ¶¶ 4, 17.

The remainder of the Complaint is consumed with (1) detailed descriptions of Plaintiffs' business and the industry at large, *id.* ¶¶ 10-13, (2) quotes from the restrictive covenants at issue, *id.* ¶¶ 21-27, and (3) conclusory allegations – "based upon information and belief" – that Ms. Coulter has somehow breached her obligations to Plaintiffs, *id.* ¶¶ 30, 34-35, 37.

There is no allegation that identifies what information Plaintiffs claim is confidential, what information Plaintiffs think Ms. Coulter misappropriated, or any specific detail explaining why Plaintiffs believe Ms. Coulter has violated any legal obligation. When stripped of its conclusory allegations and speculative assertions, the Complaint alleges nothing at all.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss claims when a plaintiff fails to state a claim for which relief can be granted. To survive a motion to dismiss in a civil case, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To be plausible, the complaint need not show a probability of plaintiff's success, but it

---

[4] "Renewal Sales" focuses on working with existing customers to convince them to renew their contract. As a renewal sales professional, Ms. Coulter did not try to find new customers.

[5] Ms. Coulter continued to work in renewal sales at Sentinel. Accordingly, her job has been to work with existing Sentinel customers to secure renewal contracts. Her job does not entail soliciting new business. Thus, Ms. Coulter poses no competitive threat to Plaintiffs at all. This reality likely explains why Plaintiffs never secured a covenant not to compete from Ms. Coulter and why Plaintiffs did not sue Ms. Coulter over two years ago.

must evidence more than a mere possibility of a right to relief." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013). Although a court accepts as true a plaintiff's factual allegations and draws all reasonable inferences in the plaintiff's favor, this benefit does not apply to legal conclusions, and "threadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678; *Gadreault v. Grearson*, 2011 WL 4915746, at *4 (D. Vt. Oct. 14, 2011). In determining whether a plaintiff has stated a plausible claim for relief, the court may "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Allegations that are "mere conclusions are not entitled to the assumption of truth[,]" and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the compliant . . . has not shown . . . that the pleader is entitled to relief." *Id.* at 664, 679 (alterations and internal citation omitted). Applying this standard to Plaintiffs' Complaint, it is clear that Plaintiffs have failed to state a claim.

## ARGUMENT

### I.    Plaintiffs Fail to Allege a Plausible Contract Claim

At its core, this action is one for breach of contract. By Plaintiffs' own telling, "they bring this lawsuit to enforce their agreements with Ms. Coulter and for damages incurred as a result of her breaches of contract, breached of the covenant of good faith and fair dealing, breaches of fiduciary duties, and her participation in a civil conspiracy with Sentinel and other former employees of Plaintiffs." Complaint ¶ 5. Plaintiffs claim Ms. Coulter violated her Restrictive Covenant Agreement ("RCA"), including an alleged improper use of confidential information (Section 1), non-solicitation of employees (Section 2), and non-solicitation of

customers (Section 3). Complaint ¶¶ 23-25, 46. This claim should be dismissed because Plaintiffs fail to allege a plausible claim for breach of contract.

"To recover damages for breach of contract in Vermont, a party must show the existence of a contract, material breach of a contractual duty, and damages." *Bank of Am., N.A. v. New England Quality Serv., Inc.*, 2017 WL 57793, at *5 (D. Vt. Jan. 4, 2017). "It is not enough to claim 'in a conclusory manner' that an agreement was breached." *Country Mut. Ins. Co. v. Altisource Online Auction, Inc.*, 2020 WL 4275660, at *5 (D. Vt. July 24, 2020), reconsideration denied, 2020 WL 6204400 (D. Vt. Oct. 22, 2020) (citing *Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009, at *10 (S.D.N.Y. Feb. 23, 2010)). It is well established that courts may dismiss breach of contract claims on a motion to dismiss. *See, e.g.*, *Country Mutual*, 2020 WL 4275660, at *5.

Plaintiffs claim Ms. Coulter violated Sections 1, 2, and 3 of the RCA. Section 1 of the RCA is titled "Confidential Information" and provides a broad definition that includes, in relevant part, "customer lists, methods for identifying prospective customers and communicating with prospective or current customers." Complaint ¶ 23, and Exhibit B to Complaint. In conclusory fashion, Plaintiffs allege Ms. Coulter "possessed and had access to" confidential information "about Plaintiffs' customer accounts," unspecified "key details on Plaintiffs' products and services," "intimate details on Plaintiffs' relationships with their customers, including the reasons why customers were considering renewing or not renewing their accounts and what customers were paying for Plaintiffs' products and services," customers' perceived strengths and weaknesses of Plaintiffs' products, and strategies for addressing those concerns. Complaint ¶¶ 2, 19, 34.

At the outset, few of the alleged items of "confidential information" fits into any category of "Confidential Information" in the RCA. For instance, "customer account" does not appear as confidential information on the list, nor does details on Plaintiffs' "relationships with their customers" or their preferences for products, services, and "perceived strengths and weaknesses." Thus, most of the information that Plaintiffs describe is not even deemed confidential under Plaintiffs' own policies and contracts.

For the few pieces of confidential information that arguably might fit into one of the categories of the "Confidential Information" Ms. Coulter had access to, much of it was irrelevant to her job and thus cannot plausibly form a basis for a breach. Ms. Coulter was an account **_renewal_** specialist. Therefore, to the extent the allegations fall into the category of "methods for identifying prospective customers and communicating with prospective or current customers," information about prospective customers is inapplicable to Ms. Coulter's job since she does not deal with "prospective customers." In terms of "methods for identifying . . . and communicating with prospective or current customers," which is a category of confidential information, Plaintiffs do not even claim that is what Ms. Coulter possessed or misused.

Even assuming Ms. Coulter somehow possessed "Confidential Information," Plaintiffs do not plead any facts that she used any of this information improperly. The Complaint alleges "on information and belief" that Ms. Coulter "cannot perform her job duties as Director of Global Renewals or Senior Director of Global Renewals . . . without inevitably disclosing and relying upon the confidential information she learned about Plaintiffs' products and services while working for Plaintiffs, and she likewise breached her contractual . . . duties to Plaintiffs based on her actions." Complaint ¶ 30. These generalized factual allegations, made on information and belief, are precisely the sort of conclusory statements that are insufficient to state a claim. In

essence, Plaintiffs recite the elements of a cause of action without pleading any facts going to the elements (relying only on unfounded and implausible "inevitability").

Plaintiffs' attempts to be more specific – albeit alleged on information and belief – also fail. For instance, Plaintiffs allege that Ms. Coulter's reference in her resume to her "thorough knowledge of the Cylance install base of customers" and her understanding of "key players, pricing strategies, and opportunities for potential growth" is an improper use of confidential information. Complaint ¶ 31. But promoting these skills is not an improper use of confidential information; it only shows that she was doing her job. As a renewal specialist, Ms. Coulter needed to understand the market, her competitors, and growth areas for the industry. This generalized knowledge cannot be deemed confidential simply because Plaintiffs claim it to be so. Additionally, there is no allegation that Ms. Coulter used any of this information at Sentinel, only that she referenced it in her resume. Plaintiffs fall far short of alleging the use of any confidential information in Ms. Coulter's new job. Accordingly, Plaintiffs have utterly failed to allege the factual predicate for their breach of contract claim.

Other attempts at allegations of improper use of confidential information are similarly threadbare and do not state a plausible claim for breach of the RCA agreement. For example, Plaintiffs allege that Ms. Coulter continued to be the point person on pricing strategies and renewal for USAA, one of Plaintiffs' accounts, even after she signed her offer with Sentinel. Complaint ¶ 32. Similarly, they allege that she worked "closely on the renewal for the Office of Personal Management ('OPM') into August 2019, one month before she left," as OPM was determining whether to renew its contract with Plaintiffs. Complaint ¶ 35. Far from being any sort of smoking gun of wrongful use of Plaintiffs' confidential information, these allegations merely show that Ms. Coulter was doing her job until the very end. Of course, doing one's job

while still employed is not evidence of wrongdoing.[6] Notably, the Complaint contains no allegations whatsoever that Ms. Coulter was involved in any way with soliciting Plaintiffs' former customers; because she wasn't. This shortcoming dooms this breach of contract claim.

Plaintiffs also claim Ms. Coulter somehow violated a covenant not to solicit former employees. Plaintiffs allege "on information and belief" that Ms. Coulter solicited Plaintiffs' former employees based on nothing more than suspicion, speculation, and subjective belief. They claim that the circumstances "suggest" that Ms. Coulter improperly solicited Plaintiffs' former employees to join Sentinel because others left Plaintiffs' employment at about the same time as Ms. Coulter, that she was not forthcoming in "her exit interview," and she therefore influenced other employees to leave. But Plaintiffs identify no individual employees that Ms. Coulter supposedly solicited; Plaintiffs fail to establish any timeline for the departures of the other employees; and Plaintiffs fail to identify any communications between Ms. Coulter and these employees that evince solicitation. Plaintiffs merely assume that Ms. Coulter was involved since others left. This is an implausible (and illogical) assumption, as there are plenty of other reasons why Plaintiffs' employees might leave without Ms. Coulter's involvement. For instance, they could have been offered better pay, stronger benefits, liked the competitor's product more, or liked Sentinel's culture better. There could also be a host of personal reasons for making a change, things like a new challenge, a change of scenery, remote working opportunities, and the like.

---

[6] As Plaintiffs are already likely aware, USAA had not even become a Sentinel customer as of the date of the Complaint; thus, this example does not support any claim. In addition, OPM became a Sentinel customer in 2018, a year before Ms. Coulter resigned. Thus, nothing Ms. Coulter did had any influence on OPM's decision. These allegations are mere smoke and mirrors proving nothing.

Instead, Plaintiffs rule out these possibilities and, for reasons only apparent to them, find nefarious conduct where they've alleged none (and where none exists).[7]

  Lastly, Plaintiffs claim Ms. Coulter somehow violated a contract because she refused to "execute an affidavit attesting that she would cease using Plaintiffs' confidential information and trade secrets and return all of the Plaintiffs' company property by December 10, 2021." Complaint ¶ 43. The alleged contract states only that Ms. Coulter will "co-operate fully with BlackBerry, both during and after Employee's employment with or engagement with BlackBerry, and will, at BlackBerry's expenses, sign further documents do such acts and other things *reasonably requested to BlackBerry*" to help protect its confidential information. (Emphasis added.) Here, Plaintiffs' request that Ms. Coulter execute an affidavit essentially admitting her wrongdoing is patently unreasonable. This is particularly true because Ms. Coulter's counsel sent written assurances to Plaintiffs' counsel that she had not violated her obligations and would not do so in the future. *See* December 10, 2021 letter from Eric Jones to Tristram Coffin responding to Plaintiffs' request for an affidavit, and November 29, 2021 letter from Tristram Coffin to Eric Jones requesting that Ms. Coulter sign the affidavit (attached respectively as **Exhibits E and F**).[8]  The fact that these assurances were in the form of a letter from counsel instead of an affidavit drafted by Plaintiffs' lawyer does not constitute a breach of contract as a matter of fact and law.

---

[7] Notably, in Plaintiffs' Complaint against Ms. Coulter's husband, Plaintiffs list 18 employees who had quit to join Sentinel. *See* Exhibit A at Par. 32. This was **before** Ms. Coulter resigned. Clearly, people were leaving in droves before Ms. Coulter left, and this wave of departures cannot be attributed to Ms. Coulter.

[8] This correspondence between counsel may be considered on a motion to dismiss, because Plaintiffs allege in the Complaint that they requested an affidavit and Ms. Coulter declined to sign the affidavit as drafted. By making allegations concerning this communication, it is proper to consider the actual documents for their complete terms and context. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (the court may consider extraneous documents on a 12(b)(6) motion to dismiss, including "any statements or documents incorporated in [a complaint] by reference").

Plaintiffs have completely failed to allege a plausible contract case. Years after Ms. Coulter left Plaintiffs' employment, and with ongoing litigation across the country, Plaintiffs have still failed to identify the specific confidential information Ms. Coulter has purportedly used and Plaintiffs fail to explain how any confidential information was used. Even with the benefit of years of discovery in parallel litigation, Plaintiffs cannot even get to first base on their claim. Plaintiffs thus fail to state a claim and Count I should be dismissed.

## II.    Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed Because It Is Duplicative of Their Breach of Contract Claim

Plaintiffs claim that Ms. Coulter breached an implied covenant of good faith and fair dealing. The factual basis for this claim is identical to their claim for breach of contract claim. *See* Complaint ¶ 52 ("The conduct of Brown Coulter, including but not limited to, her bad faith actions in disclosing Plaintiffs' confidential information and soliciting Plaintiffs' Customers constitutes a breach of the implied covenant of good faith and fair dealing."). Under Vermont law, however, a breach of covenant of good faith and fair dealing does not lie where the factual allegations are identical to those for breach of contract.

The Vermont Supreme Court has held that "[w]here a party alleges both breach of contract and breach of the implied contract of good faith and fair dealing, dual causes of action are permitted only where the different actions are premised on different conduct[.]" *Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶ 33, 203 A.3d 1186. The claim exists to provide a remedy in tort for conduct by a party that violates "community standards of decency, fairness or reasonableness, demonstrates and undue lack of diligence, or takes advantage of other parties' necessitous circumstances." *Monahan v. GMAC*, 2005 VT 110, ¶ 3, 893 A.2d 298 (citing

*Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 209, 635 A.2d 1211, 1216-17 (1993)).

Here, Plaintiffs' breach of contract and implied covenant of good faith and fair dealing are "not premised on different conduct," but is merely one in the same. *Tanzer*, 2018 VT 124, ¶ 33. This is precisely the approach Vermont courts have disallowed, and the Court should not countenance it now. Without having identified any separate, independent conduct that violates the implied covenant, the claim must fail and should be dismissed.

### III.    Plaintiffs' Breach of Fiduciary Duty Fails as a Matter of Law

Plaintiffs next allege that Ms. Coulter breached a fiduciary duty to (1) refrain from divulging proprietary information and trade secrets to competitors, and (2) to act with good faith and loyalty for the advancement of Plaintiffs' interests. *See* Complaint ¶ 55. With respect to the good faith/loyalty aspect of their claim, Plaintiffs state that the specific duty owed by Ms. Coulter was to disclose or avoid a conflict of interest created by her acceptance of a new position with Sentinel while still employed by Plaintiffs. *See id.* ¶¶ 55-56. These claims lack merit.

### A.  The Economic Loss Rule Bars Plaintiff's Breach of Fiduciary Claim Under the Circumstances of this Case

The economic loss rule bars plaintiffs from recovering in tort for economic losses incurred pursuant to an alleged contract. *See, e.g.*, *Masiello Real Estate, Inc. v. Matteo*, 2021 VT 81, ¶ 34 n.2, 266 A.3d 1243; *Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶30, 238 A.3d 608. The determining factor in whether to apply the economic loss rule is "whether there is a duty 'separate and apart from a contractual duty.'" *Walsh v. Cuba*, 2015 VT 2, ¶ 27, 117 A.3d 798 (quoting *Long Trail House Condo. Ass'n v. Engelberth Construction, Inc.*, 2012 VT 80, 59 A.3d 752). The purpose of the economic loss rule is to maintain a separation between contract and tort law consistent with the idea that, "[i]n tort law, duties are imposed by law to protect the

public from harm, whereas in contract, the parties self-impose duties and protect themselves through bargaining." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 928 A.2d 497.

Breach of fiduciary duty is a tort that arises from a breach of duty imposed by the relationship between the parties. *See* Restatement (Second) of Torts § 874 (1979). In this case, the duty Plaintiffs allege arises not from a separate or independent relationship, but from the Employment Agreement between the parties and associated Restrictive Covenant Addendum (RCA) and Employee Confidentiality & Intellectual Property Agreement (EPICA). *See generally* Exhibits A-C of Complaint. Absent the Employment Agreement and associated restrictive covenants at issue in this case, there is no relationship between the Ms. Coulter and Plaintiffs; therefore, there is no independent or separate duty supporting any tort claim.

While diligent research reveals no Vermont case law directly on point, there are persuasive cases from other jurisdictions dismissing breach of fiduciary duty claims that arise from the alleged violations of restrictive covenants in an employment agreement.

For example, in *AMG Nat'l Trust Bank v. Ries*, No. 06-CV-4337, 2011 WL 6840586 (E.D. Pa. Dec. 29, 2011), the court analyzed this exact question with respect to the alleged breach of an employment agreement and restrictive covenants therein by a former employee. In the complaint, the plaintiff bank charged the defendant employee with breach of contract (related to alleged violations of restrictive covenants), (2) breach of fiduciary duty (for his conduct), and (3) violation of the Uniform Trade Secrets Act. *Id.* at *1. Specifically, the plaintiff alleged that the defendant engaged in "rampant misconduct" including communicating with a competitor while still employed by the plaintiff. The court applied the economic loss rule, which is referred to in Pennsylvania as the "gist of the action doctrine," and ruled that the plaintiff's "breach of fiduciary duty claim is barred . . . [because] both doctrines operate to preclude a plaintiff from re-

casting ordinary breach of contract claims into tort claims." *Id.* at *5 (alterations, internal quotation marks and citations omitted). The basis for this ruling was the intertwined nature of the contract and tort claims. *See id.* ("A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations" (internal quotation marks and citation omitted); *see also id.* (noting that the "economic loss rule bars the [p]laintiff from recovering in tort—such as for a claim for breach of fiduciary duty—for injuries sustained as a direct result of the [d]efendants' alleged breach of contractual terms" (internal quotation marks and citation omitted). After applying the economic loss rule to the facts of the case, the court found that (1) the alleged "misconduct" was prohibited in the restrictive covenants contained in the defendant's contract, (2) the contract "define[s] the extent of [the] fiduciary duty[,]" and (3) the plaintiff "fail[ed] to identify any duty owed [by the defendant] that was not grounded in his contractual obligations." *Id.* The court therefore dismissed the plaintiff's breach of fiduciary duty claim.

Similarly, in *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-1857(DMC)(JAD), 2012 WL 5554543, at *8 (D.N.J. Nov. 14, 2012), the plaintiff company asserted that the defendant employees owed (and had breached) fiduciary duties including (1) not to misappropriate business and business opportunities, (2) not to solicit company employees for competing businesses, and (3) to generally be loyal and not to act on behalf of competitors while employed by the company. The factual allegations against the employees all touched on these three issues, which the plaintiffs presented in the context of a common law duty of loyalty. The court disagreed, noting that "where a breach of a fiduciary duty is intrinsic to the breach of contract, the economic loss doctrine bars tort claims for the breach of loyalty." *Id.* Applying this rule to the facts of the case, the court ruled that "the facts alleged are the same as those alleged in

the breach of contract claim, and the fiduciary duties [the plaintiff] alleges the [defendants] owed are addressed explicitly in the employment agreements." *Id.* The court therefore dismissed the plaintiff's breach of fiduciary claims.

In the present case, the duties that Plaintiffs allege Ms. Coulter breached all arise directly from and are explicitly addressed in the Employment Agreement and related restrictive covenants. First, Plaintiffs allege that Ms. Coulter has misappropriated and disclosed or otherwise used Plaintiffs' confidential and proprietary information without consent. *See* Complaint ¶ 56. To the extent that Plaintiffs frame this allegation as a tort (breach of fiduciary duty), the duty to refrain from misappropriating, divulging or otherwise using proprietary information and trade secrets is expressly stated in the Confidential Information clause of the Restrictive Covenant Addendum. *See* Exhibit B to Complaint § 1 ("Employee thus agrees that, both during and after employment with Blackberry, Employee will not directly or indirectly use, divulge, furnish, or make accessible to any person or entity and Confidential Information."). To the extent that Plaintiffs seek to bring an additional tort claim (breach of fiduciary duty) for the exact same conduct prohibited by contract, that claim must fail as a matter of law due to the lack of separate or independent duty.

Next, Plaintiffs obliquely allege that Ms. Coulter has violated a fiduciary duty to avoid conflicts of interest related to prospective or future employment during the term of her employment. The allegations in support for this claim are that Ms. Coulter (1) continued to receive Plaintiffs' confidential or proprietary information after accepting employment with Sentinel, (2) concealed her new position during the term of her employment, and (3) communicated with Plaintiffs' customers after accepting a new position with Sentinel. *See* Complaint ¶ 56.

As a threshold matter, there is no common law duty that specifically prohibits any of this alleged conduct. The common law duty of loyalty governs the conduct of employees in positions of trust and confidence with their employer, but it does not prohibit an employee from accepting, concealing or preparing for new employment while winding up her current employment so long as the employee doesn't actively compete with her employer or misappropriate her employer's tangible or intangible property while still employed. *See* Restatement of Employment Law § 8.01(b)(2)-(3) (2015); *see also Mylan Technologies, Inc. v. Zydus Noveltech, Inc.*, 2015 WL 3935320, at *6 (Vt.Super.)("An employee is entitled to have negotiations with a new employer without disclosing them to his current employer, and has no legal duty to tell the first employer where he is headed when he leaves")(citing Restatement (Third) of Agency § 8.04 cmt. c). To the extent that Plaintiffs' allegations can arguably be reframed in the context of the duty of loyalty, as either misappropriation (continuing to receive and use Plaintiffs' confidential or proprietary information after accepting employment with Sentinel), or improper competition (communicating with Plaintiffs' customers after accepting new employment with a competitor), the duty not to engage in such conduct is clearly established in the Restrictive Covenant Addendum. *See* Exhibit B to Complaint § 1, *see* discussion *supra*, and § 3 ("Non-solicitation of Customers: Employee agrees that while employed by Blackberry and for twelve (12) months thereafter, Employee will not directly or indirectly solicit, service, endeavor to solicit or service, or otherwise have any business dealings with Blackberry Customer . . . for the purpose of selling or supplying to or purchasing from such Customer any product or service that is competitive with the products or services Blackberry sells or supplies.").

Plaintiffs' reframing of the alleged conduct in the context of common law duties owed by employees does not change the fact the conduct is also (and expressly) addressed in the

Employment Agreement and associated restrictive covenants. Therefore, Plaintiffs' breach of fiduciary duty claim is barred by the economic loss rule and fails as a matter of law.

### B.  Failure to Plead Facts that State a Plausible Claim for Relief

Even if the economic loss rule did not bar Plaintiffs' breach of fiduciary duty claim as a matter of law, Plaintiffs also fail to plead facts that plausibly establish a right to relief.[9] The elements of a breach of fiduciary duty claim are: (1) a breach of the fiduciary obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that damages resulted. *See Cooper v. Cooper*, 173 Vt. 1, 783 A.2d 430, 443 (Vt. 2001).

Plaintiffs offer no facts to sufficiently state a breach of fiduciary duty claim. The actual factual allegations against Ms. Coulter are fairly summarized as follows:

Ms. Coulter worked for Plaintiffs as a Sr. Manager of Renewal Sales from July 2015 until February 2019. *See* Complaint ¶¶ 2, 14-15. In that capacity, Ms. Coulter possessed information about Plaintiffs' products, pricing, and customers that she used in her efforts to convince existing customers to renew their accounts. *See id.* ¶ 19. Ms. Coulter accepted employment with Sentinel before terminating her employment with Plaintiffs. *See id.* ¶ 17. Ms. Coulter's role with Sentinel also involved existing customer renewals. *Id.* ¶¶ 17, 28. Ms. Coulter did not disclose her new job during her exit interview. *See id.* ¶ 18.

These are all the relevant facts that Plaintiffs affirmatively plead; none of these facts indicates a breach of fiduciary obligation. Plaintiffs then couch their remaining allegations as being "[b]ased on information and belief" in order to mask the insufficiently of the pleading. *See id.* ¶¶ 30, 34. For example, Plaintiffs allege that, "based on information and belief . . . [Ms.

---

[9] This same argument applies and is made in greater detail with respect to Plaintiffs' breach of contract claim. *See* Argument § I *supra*.

Coulter cannot perform her job duties . . . at Sentinel without inevitably disclosing and relying upon the confidential information she learned about Plaintiffs' products and services while working [there]." *Id.* ¶ 30. Plaintiffs further allege that, "based on information and belief . . . [1] [Ms. Coulter] inevitably relies [at Sentinel] on Plaintiffs' confidential information," [2] "[h]er work in renewals [at Sentinel] inevitably requires her to consult with customers about the advantages and disadvantages of competing products," and "[s]he cannot perform her works at Sentinel without inevitably relying on Plaintiffs' confidential information." *See id.* ¶ 34. Plaintiffs plead no facts indicating (1) what allegedly confidential information Ms. Coulter must "inevitably" use in her employment with Sentinel, (2) to whom she has allegedly disclosed the information to, or (3) why she could not perform her new job – which relates to the renewal of Sentinel's existing customer accounts – without relying on information obtained from Plaintiffs. The allegation is so disconnected from reality that it suggests that Sentinel could not have its own renewals department without staffing it with employees who all previously worked for Plaintiffs or other competitors. This obviously is not correct and makes the allegations, in legal parlance, entirely speculative and conclusory. *See, e.g.*, *L&B Truck Services, Inc. v. Daimler Trucks North America LLC*, No. 1:09-CV-74, 2009 WL 3584346, at *1 (D. Vt. Oct. 26, 2009) (outlining the Second Circuit's plausibility standard and holding that "[c]onclusory statements are not sufficient factual allegations[,]" (citing *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28 (2d Cir. 2006), and "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" (quoting *ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

19

The remaining factual allegations that could even remotely be connected to a breach of fiduciary duty claims are directly tied (by Plaintiffs) to provisions of Ms. Coulter's RCA. *See* Complaint ¶¶ 32 (implicating Section 3 of the RCA), 35 (citing Section 3 of the RCA), 37 (citing Section 4 of the RCA). So, to the extent that these allegations are adequately pleaded, which Ms. Coulter denies, they are barred by the economic loss rule (as discussed above) and cannot form the basis of a breach of fiduciary duty claim.

For the foregoing reasons, Plaintiffs' breach of fiduciary claim fails to state a claim upon which relief may be granted and must be dismissed.

### IV.    Plaintiffs have not stated a plausible claim for civil conspiracy

Plaintiffs' claim for civil conspiracy is premised on Ms. Coulter and unidentified co-conspirators agreeing, pursuant to some unspecified agreement, to "misappropriate Plaintiffs' confidential and proprietary information and to breach Ms. Coulter's fiduciary duties to Plaintiffs." Complaint ¶¶ 58-61. This claim must be dismissed.

As a threshold issue, the Vermont Supreme Court has questioned whether there is an independent claim for civil conspiracy at all. *Davis v. Nile*, 2003 WL 25746021, at *3 (Vt. Supr. Order Mar. Term 2003) (assuming there is an independent cause of action but collecting cases from states showing the opposite); *Wei Wang v. Shen Jianming*, 2019 WL 3254613, at *6 (D. Vt. July 19, 2019) ("In a non-precedential Order, a three-judge panel of the Vermont Supreme Court appeared to question the continued validity of a common law cause of action for civil conspiracy.")). Based on this lack of clarity of Vermont substantive law, this Court has predicted that, "in certain circumstances, a civil conspiracy claim may be recognized under Vermont law which provides that all who aid in the commission of a tort by another, or who approve of it after it is done, *if done for their benefit*, are liable in the same manner as they would be if they had

done it with their own hands." *Wei Wang*, 2019 WL 3254613, at *6 (emphasis in original) (internal citations omitted).

Assuming this limited civil conspiracy claim exists in Vermont, it does not apply to the situation here because Ms. Coulter has not engaged in misappropriating any confidential information. As stated in Argument, Section I, *supra*, Plaintiffs have not identified what Confidential Information Ms. Coulter supposedly misappropriated or that she used it in any way. Nor have Plaintiffs stated a claim that she breached her fiduciary duty, therefore dooming that theory. *See supra*, § III.   What's more, any misappropriation would not have been done for Ms. Coulter's benefit. Indeed, if any Confidential Information was taken (and Ms. Coulter has not taken any such information), there is no allegation it was for Ms. Coulter's benefit, and no explanation of how she benefited. Accordingly, under this Court's prediction of how Vermont may recognize a narrow claim for civil conspiracy, it is inapplicable to this dispute.

In any event, Plaintiffs' claim fails because they do not identify any agreement between Ms. Coulter and other purported co-conspirators. Under Vermont law, and assuming arguendo that a civil conspiracy tort exists, the claim "cannot be sustained unless something causing damage to the plaintiff has been done in furtherance of the agreement, and the thing done be something unlawful in itself." *Davis*, 2003 WL 25746021, at *3 (dismissing claim where no "illegal means . . . employed"); *Wei Wang*, 2019 WL 3254613, at *7 (relying on Second Restatement of Torts elements, which include the requirement that parties act "in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result.").

Here, Plaintiffs have not identified any agreement Ms. Coulter joined to misappropriate confidential information or breach any duty. Plaintiffs do not specify the other parties, the terms

of the agreement, whether it was tacit or express, whether it was written or oral, or when it was made. This lack of any concrete allegation about the agreement makes the claim implausible on its face, and it must be dismissed.

**V.     In the Alternative, the Case Should Be Stayed Pending the Outcome of Other Related Litigation**

If the Court concludes that Plaintiffs have somehow plausibly stated claims for relief on any claim, Ms. Coulter respectfully requests that the Court stay any remaining proceeding pending the outcome of (1) the pending case between Plaintiffs and Sentinel in California state court, 20-CV-361950 (Superior Court Santa Clara County, CA), and (2) the pending case between Plaintiffs and Chris Coulter and Sentinel in Vermont state court (953-10-19, Cncv). "[I]n appropriate circumstances, principles of comity can provide [the] basis for nonintervention . . . in a dispute that has already come before some other forum." *Cavallari v. Martin*, 169 Vt. 201, 215 (1999); *see Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation."); *Andrews v. Smith*, 5 F.833, 835 (C.C. D. Vt. 1881) (holding that the principle of comity permits a federal court to decline hearing claims based on the same subject matter as claims already before a state court); *Dwight v. Central Vermont R. Co.*, 9 F.785, 789 (C.C. D. Vt. 1881) (same).

Although she is not specifically named in the California litigation, it is clear that Ms. Coulter will be one of the twenty unnamed "Doe" defendants in that lawsuit in time. *See* Complaint for Damages and Injunctive Relief in *Blackberry Corporation et al. v. Sentinel Labs, Inc. et al.*, 20-CV-361950, at ¶ 11. As discussed above, in the California case Plaintiffs seek damages for misappropriation and misuse of Plaintiffs' confidential information and trade secrets, and specifically allege that "information about Plaintiffs' upgrade cycles and products,

and its customers [sic] specific contract and renewal information, which customers have stated interests in upgrades and features of upgrades they want to order, knowledge about future upgrade plans, were all trade secrets when Sentinel misappropriated them." *See id.* ¶¶ 38-40, 43. These specific allegations about the misappropriation of Plaintiffs' customers' account renewal interests and information quite obviously refer to Ms. Coulter's alleged conduct given that she worked in the area of renewals for both Plaintiffs and Sentinel.[10] Ms. Coulter is therefore an unnamed (or soon to be named) defendant in the California case. As such, this Court should dismiss or stay any surviving litigation of the same claims in this forum that are currently before the California state court.

Additional considerations weigh in favor of this Court deferring in favor of the California state court. One of these reasons is plain judicial economy. Conducting discovery, motions practice and trying the same issues before this Court that will be heard in the California case is a waste of resources—both for the parties and for the courts. To any extent that there are live issues for this Court to hear in this case after the California case is concluded, the Court can use its case management tools to narrow the focus (particularly of discovery) and ensure that the case moves forward in an efficient manner.

A second reason is that principles of California trade secrets laws (which have no analog in Vermont law) require that Plaintiff identify the trade secrets that have allegedly been misappropriated "with reasonable particularity" before discovery can proceed on that claim. *See* Cal. Civ. Proc. Code § 2019.210; *Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333, 1336 (2009). The parties in that case (Plaintiffs and Sentinel) have been negotiating as to

---

[10] Similarly, the Complaint alleges that Ms. Coulter has conspired with Sentinel and other former employees to misappropriate confidential and proprietary information. *See* Complaint ¶ 59. This conspiracy claim is squarely at issue in the California case. *See* Complaint for Damages and Injunctive Relief in *Blackberry Corporation et al. v. Sentinel Labs, Inc. et al.*, 20-CV-361950, at ¶¶ 1-2, 6.

the content of this disclosure for years and, to the extent that any of the to-be identified information relates to Ms. Coulter's employment or alleged conduct, the disclosure would significantly narrow this litigation and obviate the need for discovery on various topics.

Finally, the factfinder in each case will be asked to try the same question – whether Ms. Coulter and other former employees appropriated trade secrets in violation of their employment contracts or independent fiduciary duty. It is well-established that courts seek to avoid the possibility of inconsistent judgments on the same claims. *See generally e.g.*, *Weiss V. Weiss* 998 A.2d 766, 776 (Conn. 2010) (noting the general principle that inconsistent judgments would "undermine the integrity of the judicial system"); *Cunard Steamship Co. Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 457 (2d Cir. 1985) ("The rationale underlying the granting of comity to a final foreign judgment is that litigation should end after the parties have had an opportunity to present their cases fully and fairly to a court of competent jurisdiction.").

Likewise, several issues in this case are identical or substantially similar to issues in the Vermont Superior Court case against Ms. Coulter's husband and Sentinel. For example, Plaintiffs allege a similar series of claims (misappropriation of confidential information, breach of non-solicitation covenants, and civil conspiracy). In addition, Plaintiffs have recently added a claim for "specific performance" seeking access to Mr. Coulter's phone, devices, and data (the precise claim Plaintiffs assert in this case). Finally, to the extent this case can fairly be viewed as an extension of Plaintiffs' claims against Mr. Coulter, the interests of judicial economy and comity are best served by awaiting the resolution of the pending Superior Court case before addressing any lingering issue in this case. *See*, *e.g.*, *Diedenhofen-Lennartz v. Diedenhofen*, 931 A.2d 439, 446 (Del. Ch. 2007)("precise identity of the parties and issues is not required" for abstention); *see also Landis v. North American Co.*, 299 U.S. 248 (1936) (federal courts

have power to stay litigation even where parties are not identical if stay is consistent with concerns of judicial economy).

This case implicates only a tiny fraction of the legal issues and claims as between Plaintiffs and Sentinel. The proper place to resolve the issues is in the California trade secrets litigation and in the pending Vermont Superior Court case. If any questions currently before this Court remain unresolved after the resolution of those cases, the Court can lift the stay and the case can proceed narrowly as needed.

## CONCLUSION

For all of these reasons, Plaintiffs have completely failed to allege a single plausible cause of action against Ms. Coulter. Therefore, Ms. Coulter respectful requests that the Court DISMISS all claims set forth in Plaintiffs' Complaint (or STAY any claim that the court concludes has been adequately pleaded).

DATED at Burlington, Vermont this 13th day of May, 2022.

LANGROCK SPERRY & WOOL, LLP

_____

Eric D. Jones
Matthew A. Zidovsky
Justin G. Sherman
PO Box 721, 210 College Street
Burlington, VT 05402
ejones@langrock.com
mzidovsky@langrock.com
jsherman@langrock.com
Phone:  802-864-0217

Attorneys for Defendant KAYLAN COULTER

1439969.2