U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JUN -3 PM 3: 20

CLERK

BY_____
DEPUTY CLERK



UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BLACKBERRY CORPORATION, AND
CYLANCE INC. (d/b/a BLACKBERRY
CYLANCE),

                Plaintiffs,

    v.

KAYLAN BROWN COULTER,

                Defendant.

Docket No. 5:22-cv-98

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiffs BlackBerry Corporation ("BlackBerry") and Cylance Inc., d/b/a BlackBerry Cylance ("Cylance" or "BlackBerry Cylance") (collectively, "Plaintiffs") commence this action against Defendant Kaylan Brown Coulter ("Brown Coulter").

2.    Brown Coulter served as Senior Manager Renewal Sales at Cylance from July 2015 until February 2019. Following BlackBerry's acquisition of Cylance in February 2019, Brown Coulter joined BlackBerry as Director, Renewal Sales. In her roles, she possessed and had access to critical confidential information related to Plaintiffs, including critical confidential information about Plaintiffs' customer accounts and key details on Plaintiffs' products and services. Brown Coulter also developed and was permitted to develop close relationships of trust with Plaintiffs' customers and other employees of Plaintiffs.

3.    As a condition of her employment with Plaintiffs, Brown Coulter signed agreements that expressly prohibit her from using or disclosing Plaintiffs' confidential

Downs
Rachlin
Martin PLLC

information.  She also signed agreements that prohibited her from directly or indirectly soliciting Plaintiffs' customers and employees for twelve (12) months following the end of her employment.

4.      Brown Coulter left employment with Plaintiffs on or about September 20, 2019. Unbeknownst to Plaintiffs at the time, Brown Coulter had already agreed to join Sentinel Labs, Inc. d/b/a SentinelOne and SentinelOne.com (hereinafter "Sentinel"), a direct competitor of Plaintiffs in the next-generation antivirus industry.  Brown Coulter signed her offer letter with Sentinel on September 7, 2019 and started work at Sentinel on or about October 15, 2019.

5.      Plaintiffs now bring this lawsuit to enforce their agreements with Brown Coulter and for damages incurred as a result of her breaches of contract, breaches of the covenant of good faith and fair dealing, breaches of fiduciary duties, and her participation in a civil conspiracy with Sentinel and other former employees of Plaintiffs.  Plaintiffs seek to recover damages and such other relief, including specific performance, as they are entitled from Brown Coulter.

**I.    <u>The Parties</u>**

6.      BlackBerry is a Delaware corporation with its principal place of business located at 3001 Bishop Drive, Suite 400, San Ramon, California 94583.  It has done business in Vermont by and through Brown Coulter, who had a home office and performed work for BlackBerry from her home in Vermont during periods in which she was employed by Blackberry.

7.      Plaintiff Cylance is a Delaware corporation with its principal place of business located at 400 Spectrum Drive, Irvine, California 92618.  Cylance is a wholly-owned subsidiary of BlackBerry Corporation and since February 21, 2019 has done business as BlackBerry Cylance. Cylance also conducted business in Vermont via Brown Coulter's employment and her home office.

Downs
Rachlin
Martin PLLC

2

8.     Brown Coulter is an individual who resided at 118 Brigham Hill Lane, Essex Junction, Vermont 05452 at the time she executed her agreements with Plaintiffs.

## II.    Jurisdiction & Venue

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the District of Vermont.  This Court has personal jurisdiction over Brown Coulter, including based on her agreements with Plaintiffs designating choice of law, venue, and jurisdiction in Vermont, and because she engaged in acts or omissions in Vermont out of which this action arises.

## III.    Background

10.     BlackBerry is a trusted security software and services company that provides enterprises and governments with the technology they need to secure the Internet of Things.  Since its inception, it has offered award winning products, services, and embedded technologies to millions of individual consumers, organizations (including educational institutions), Fortune 500 companies, and governments.  Security and privacy are hallmarks of BlackBerry's products.

11.     On February 21, 2019, BlackBerry acquired Cylance (now BlackBerry Cylance) and all of its intellectual property, trade secrets, and other confidential, proprietary information. Since 2012, Plaintiffs have built a market-leading native Artificial Intelligence (AI) platform in the security industry, enabling them to offer solutions ranging from enterprise endpoint protection, detection, and response, to smart antivirus for consumers. The platform is resilient and requires only minimal updates to its multigenerational AI models.  It also provides powerful data science

Downs
Rachlin
Martin PLLC                                3

capabilities using deep learning algorithms designed to detect anomalous patterns. Plaintiffs' AI Platform – after many years and many millions of dollars in development costs – is a unified technology architecture built on continuous integration and continuous delivery principles. It delivers continuous threat prevention, detection, and response regardless of whether the endpoint resides on or off the network. For security teams with limited security expertise, Plaintiffs' AI Platform can run as a self-driving security operations center where response to active threats can be initiated without any human intervention. For senior teams that want a more hands-on approach to response, Plaintiffs' AI Platform can deliver the critical data required to make response decisions in a powerful, yet simple to use, interface. This flexibility means that Plaintiffs' AI Platform can help companies of any size, from a lean startup to large multinational organizations, improve their security. In addition, Plaintiffs have developed a way for organizations to integrate the AI Platform with their existing security environments and achieve the associated prevention and automation benefits.

12.     Having successfully applied AI to prevent threats from executing at the endpoint, Plaintiffs have now advanced to another innovative use of native AI: to detect and respond to threats. By applying machine learning to threat-detection modules, Plaintiffs' AI Platform continuously analyzes changes occurring on each endpoint to uncover threats that would be difficult, if not impossible, for a human analyst to find quickly enough to mitigate. When a potential threat is identified, Plaintiffs' AI Platform can take decisive, automated action in real time to thwart it. Organizations can also launch custom controls supported by Plaintiffs to uncover hidden threats specific to user environments. All of this technology is unique in the cyber security industry and is of a highly confidential and proprietary nature.

Downs
Rachlin
Martin PLLC

4

13.    Sentinel was founded in 2013.  The company markets itself by claiming that it has produced an AI platform that delivers the defense a company needs to prevent, detect and undo known and unknown threats.  Sentinel claims it delivers autonomous endpoint protection through a single agent that successfully prevents, detects, and responds to attacks across all major vectors. It claims the Sentinel platform saves customers time by applying AI to automatically eliminate threats in real time and is the only solution to provide full visibility across networks directly from the endpoint.

14.    Brown Coulter was the Senior Manager Renewal Sales at Cylance from July 2015 until February 2019.

15.    In February 2019, Brown Coulter joined BlackBerry as the Senior Manager of Renewal Sales, reporting to the Senior Vice President of Americas Sales, and served most recently as Director, Renewal Sales.

16.    During most of her time at BlackBerry and Cylance, Brown Coulter worked with her husband, Chris Coulter ("Coulter").   Coulter served as Vice President, Technology of BlackBerry and as Chief Technology Officer at Cylance.  In June 2019, Coulter resigned from his position at BlackBerry and joined Sentinel, in direct and knowing violation of his noncompete agreement.

17.    A few months later, on or about September 20, 2019, Brown Coulter resigned from her position at BlackBerry.  On or about September 7, 2019, Brown Coulter signed her offer letter with Sentinel to join the company as Director of Global Renewals.  On or about October 15, 2019, Brown Coulter began working for Sentinel.

18.    In both of their exit interviews with BlackBerry, Coulter and Brown Coulter misrepresented their future plans and did not disclose that they had accepted positions at Sentinel, a direct competitor of Plaintiffs.

19.    In her roles with Plaintiffs, Brown Coulter possessed critical confidential information related to Plaintiffs' customers and their products and services. Brown Coulter knew the intimate details of Plaintiffs' relationships with their customers, including the reasons why customers were considering renewing or not renewing their accounts and what customers were paying for Plaintiffs' products and services. Importantly, she also knew firsthand what customers liked and did not like about Plaintiffs' products and services, what customers perceived to be strengths and weaknesses of Plaintiffs' products, and Plaintiffs' strategies for addressing such concerns.

20.    The information Brown Coulter used in her job with Plaintiffs and the knowledge she developed about Plaintiffs' customers in her job would be extremely valuable for Plaintiffs' competitors, such as Sentinel, and its disclosure would be severely damaging to Plaintiffs' business.

21.    Brown Coulter's January 18, 2019 Offer Letter from BlackBerry ("Employment Agreement") stated in Paragraph 5.5 thereof as follows: "Attached as Schedule A to this Agreement is the BlackBerry Restrictive Covenant Addendum ("RCA"). As a condition of entering into this Employment Agreement *you agree to sign and to be bound by all of the terms and conditions of the RCA*." (*See*, Exhibit A, Paragraph 5.5) (emphasis added). Brown Coulter's RCA is attached hereto as Exhibit B.

Downs
Rachlin
Martin PLLC

6

22.     Section 4.3 of the Employment Agreement states: "At the time of cessation of your employment for any reason, you agree to return all BlackBerry and Cylance property, including equipment, devices, and information in whatever form it is stored." Exh. A.

23.     Section 1 of the RCA, which is an addendum to the Employment Agreement, states in relevant part:

> Employee understands and agrees that as part of Employee's employment with BlackBerry Limited, or its subsidiaries, successors, or affiliates ("BlackBerry") and to assist with the performance of Employee's duties, Employee will receive, conceive, observe, and/or develop Confidential Information (as defined below). Employee understands and agrees that this Confidential Information is the exclusive property of BlackBerry and agrees to preserve in confidence and not to use or disclose, both during and after employment with BlackBerry, any Confidential Information known or provided to Employee as a result of Employee's relationship with BlackBerry, except as required in the performance of Employee's services for and to BlackBerry. *Confidential Information* includes but is not limited to all plans, trade secrets, proprietary information, data, know-how, processes, patented or proprietary technologies, designs, hardware, software, software code, operating systems, techniques, specifications, drawings, ceramic formulations, compositions and products, equipment, identity and description of records, customer lists, methods for identifying prospective customers and communicating with prospective or current customers, internal memoranda or policies, supplier identity, marketing and sales plans, pricing information and strategies, forecasts, margins, plans for expansion of products or services, business strategies, computer data, financial information, costs, confidential information of other employees, and all other information, concepts, or ideas involving or reasonably related to BlackBerry's business or prospective business and not generally available to the public . . . .
> Exh. B.

24.     Section 2 of the RCA (Non-Solicitation of Employees) states that while she is employed at BlackBerry and for twelve (12) months after her employment with BlackBerry is terminated, Brown Coulter is forbidden from directly or indirectly soliciting or attempting to solicit any BlackBerry Employee to leave their employment and is also forbidden from directly or indirectly soliciting or attempting to solicit or influence a former employee who has left the employ of BlackBerry within the twelve (12) months preceding Brown Coulter's last day of employment with BlackBerry. Exh. B.

25.     Section 3 of the RCA (Non-solicitation of Customers) states that while employed by BlackBerry and for twelve (12) months after her employment with BlackBerry terminated, Brown Coulter is forbidden from directly or indirectly soliciting, servicing, endeavoring to solicit or service, or otherwise having any business dealing with any BlackBerry Customer (any person or entity with which Brown Coulter had contact while at BlackBerry that has done with Business with BlackBerry within the last twelve (12) months of her employment with BlackBerry or is aware or should have been reasonably aware that BlackBerry solicited for business) "for the purpose of selling or supplying to or purchasing from such Customer any product or service that is competitive with the products or services BlackBerry sells or supplies." Exh. B.

26.     Section 5 of the RCA states in relevant part: "Employee confirms that the obligations in Sections 1, 2 and 3 separately and collectively, are fair and reasonable…" Exh. B.

27.     Section 4 of the RCA states:

Employee agrees that in the event Employee breaches any provision(s) in Section 1, 2 and 3, the restrictive time period(s) set forth in the specific Section(s) shall be extended by the period of such violation. Employee therefore understand and agrees that a breach of any provision(s) in Sections 1, 2 and 3 effectively restarts the restrictive time period(s) for the specific Section(s) with each violation.

Exh. B.

28.     Since on or about October 15, 2019, Brown Coulter has been working for Sentinel as Director of Global Renewals. In approximately February 2022, Brown Coulter was promoted to Senior Director, Global Renewals.

29.     When Brown Coulter joined Sentinel, she performed her job duties from her same home office in Essex Junction, Vermont, and has continued to perform many of the same tasks and duties and offering the same services that she performed for Plaintiffs.

Downs
Rachlin
Martin PLLC                                                        8

30.     Based on information and belief, Brown Coulter has worked with Coulter and Sentinel as part of an ongoing and continuous scheme to poach Plaintiffs' chief talent in order to gain access to confidential information regarding Plaintiffs' products, services, and customers in knowing violation of Brown Coulter's restrictive covenants with BlackBerry.

31.     Based on information and belief, Brown Coulter cannot perform her job duties as Director of Global Renewals or Senior Director of Global Renewals at Sentinel without inevitably disclosing and relying upon the confidential information she learned about Plaintiffs' products, services, and customers while working for Plaintiffs, and she has likewise breached her contractual and fiduciary duties to Plaintiffs based on her actions.

32.     For example, on or about September 3, 2019, Brown Coulter sent her resume to Ian Hughes, another former employee of Plaintiffs who was then employed by Sentinel. In her resume, Brown Coulter highlighted her "thorough knowledge of the Cylance install base of customers," as well as her understanding of "key players, pricing strategies, and opportunities for potential growth."

33.     Thereafter, on September 12, 2019, a few days before she left BlackBerry to join Sentinel and after she signed her offer with Sentinel, Brown continued to be the point person on pricing strategies and renewals with USAA, one of Plaintiffs' largest customers and an account worth millions annually. Sentinel has since targeted USAA as a potential customer for its products and services.

34.     On or about September 16, 2019, in her exit interview with Plaintiffs, Brown Coulter misrepresented that she was "taking some very much time needed off [sic]" and that she had made "no decisions on next steps as of this point" despite the fact that she had already accepted a high-level position with Plaintiffs' direct competitor, Sentinel. Brown Coulter affirmatively

concealed that she was joining Plaintiffs' direct competitor. In doing so, she ensured that she would continue to have access to Plaintiffs' confidential information until her last day, knowing that Plaintiffs would have removed her access to confidential information sooner if they had known of her plan to join Sentinel.

35.     Moreover, Brown Coulter was a knowing and active participant in Coulter's deceptions to conceal his contractual violations against Plaintiffs. Coulter admitted that he instructed Brown Coulter to misrepresent his plans to BlackBerry employees in order to prevent Plaintiffs from learning of his scheme to leave BlackBerry and join Sentinel in violation of his noncompete agreement. On May 20, 2019, when Coulter was still employed by BlackBerry but negotiating the terms of his final offer from Sentinel, he did not attend a large annual BlackBerry sales meeting. He told Brown Coulter "to tell everyone I have some 'personal things to address'" as the reason for his conspicuous absence.

36.     Based upon information and belief, in her position at Sentinel, Brown Coulter inevitably relies upon Plaintiffs' confidential information, in particular their confidential information related to their customers and customer strategies and product capabilities and functionality. Her work in renewals inevitably requires her to consult with customers about the advantages and disadvantages of competing products and services within the next-generation antivirus industry. She cannot perform her work at Sentinel without inevitably relying on Plaintiffs' confidential information.

37.     Brown Coulter has breached and continues to breach Section 1 of her RCA not only through her inevitable and continuing reliance on and disclosure of Plaintiffs' confidential information in her role at Sentinel, but also through her recently-discovered affirmative acts of misappropriating Plaintiffs' confidential information.

Downs
Rachlin
Martin PLLC

38.     On April 27, 2022, after this case was filed, Coulter produced several documents reflecting highly confidential information related to Plaintiffs' customers from an allegedly "personal" cloud storage account he shares with Brown Coulter.  These documents include photographs that appear to be taken by cell phone of internal emails sent from Brown Coulter's BlackBerry email account on **September 9, 2019** to other BlackBerry customer relations personnel.  September 9 is **two days after** Brown Coulter accepted her offer to join Sentinel, and the **same day** she informed BlackBerry that she would be leaving her position.  At this time, Coulter was a Sentinel employee and possessed and had access to these images of internal Blackberry emails reflecting Plaintiffs' confidential information through the shared cloud storage account.

39.     Despite repeated requests to both her and Coulter, neither Brown Coulter nor Coulter informed Plaintiffs that they had such highly confidential information of Plaintiffs in their possession, custody, or control for years.

40.     Based on information and belief, as well as on Brown Coulter's repeated misrepresentations to Plaintiffs about her plan to join Sentinel and her failure to disclose her possession of such confidential information despite repeated requests to do so, Brown Coulter has violated Section 1 of her RCA by, among other ways, failing to preserve this Confidential Information in confidence and/or by using or disclosing such Confidential Information.

41.     Based on information and belief, Brown Coulter has violated Section 3 of her RCA by directly or indirectly soliciting, servicing, endeavoring to solicit or service, or otherwise having any business dealing with any BlackBerry Customers for the purpose of selling or supplying Sentinel's products or services, or purchasing from BlackBerry Customers products or services competitive with BlackBerry.  For example, Brown Coulter worked closely on the renewal for the

Downs
Rachlin
Martin PLLC

11

Office of Personnel Management ("OPM") into August 2019, one month before she left, as OPM was considering whether to renew its contract with Plaintiffs. OPM has since become a customer of Sentinel.

42.     At the preliminary injunction hearing in the case against Chris Coulter, both Coulter and Eran Ashkenazi, then Sentinel's Senior Vice President of Global Support and Services and now Sentinel's Chief Customer Officer, testified that Sentinel placed no limits on the companies, customers, or potential customers with which its employees could communicate or otherwise do business. As Chris Coulter testified, "Sales are very good at doing their job by any means necessary . . . . [S]ales are very good at trying to find any and all resources to help them." Employees who work with customers at Sentinel, in particular the former BlackBerry employees who have been recruited to Sentinel, have and will use other former BlackBerry employees like Brown Coulter to gain an unfair competitive edge in the marketplace, including by directly or indirectly, soliciting, servicing, endeavoring to solicit or service, or otherwise having any business dealings with BlackBerry Customers. Based on information and belief, Brown Coulter's role at Sentinel requires her to work with customers of Sentinel and customers of Plaintiffs in violation of Section 3 of her RCA.

43.     Recently discovered evidence also shows Brown Coulter has violated and continues to violate Section 3 of her RCA. For example, one of the emails from Brown Coulter's BlackBerry email account that was shared with then-Sentinel employee Coulter includes highly confidential information on Plaintiffs' current and former customers. This document identifies the customers lost during Q2 of Fiscal Year 2020 for BlackBerry and Cylance, as well as the financial losses associated with those lost customers, and includes other sensitive confidential information. The spreadsheet attached to this email identifies several former customers of Plaintiffs that have since

become customers of Sentinel. Sentinel announced a new partnership with one of these former customers on December 3, 2019, just a month and a half after Brown Coulter joined Sentinel.

44.     Based on information and belief, Brown Coulter has violated Section 4 of her RCA by improperly influencing and/or soliciting Plaintiffs' employees to leave BlackBerry. Brown Coulter joined Sentinel around the same time as several other of Plaintiffs' employees with whom she had worked. The circumstances of her departure, including but not limited to her lying in her exit interview, similar conduct by Coulter and the timing and circumstances of the departure of these other employees suggests that she, directly or indirectly, alone or with Coulter and Sentinel, improperly influenced them to leave BlackBerry and join Sentinel in violation of Section 4 of her RCA.

45.     For example, Mason Spaunburg resigned from BlackBerry on September 9, 2019 – the **same day** as Brown Coulter. Spaunburg and Brown Coulter worked together in Sales at BlackBerry Cylance. Spaunburg served on the Renewals team with Brown Coulter in 2019 and worked with her on customer accounts, including the account of at least one customer who has since become a customer of or entered into a substantial joint venture with Sentinel. Spaunburg shared his personal contact information with Brown Coulter upon his resignation. Spaunburg and Brown Coulter both subsequently joined Sentinel. Spaunburg listed "Better total compensation" as his reason for leaving Plaintiffs. Based on information and belief, Brown Coulter solicited Spaunburg to join Sentinel. This inference is supported by timing of their departures to the same competitor and their close working relationship.

46.     Shortly after Brown Coulter's last day at BlackBerry on September 20, 2019, Lloyd Webb also resigned on September 25, 2019. Brown Coulter knew Webb because they both worked in Sales Leadership for BlackBerry Cylance. Webb stated his reason for leaving was that he

Downs
Rachlin
Martin PLLC                                    13

"Disagree[d] with company direction." On his last day, Webb deleted "a large number of files" from his BlackBerry OneDrive account. Webb subsequently joined Sentinel. Brown Coulter's husband provided a reference for Webb when he was hired to join Sentinel. Based on information and belief, Brown Coulter worked with Sentinel and Coulter to solicit Webb to join Sentinel. This inference is supported by timing of Brown Coulter's and Webb's departures to the same competitor and their close working relationship.

47.    Shortly after Brown Coulter's first day at Sentinel on October 15, 2019, Barnaby Page resigned on October 21, 2019. Page listed "Challenging Opportunity Offered" as his reason for leaving. According to his LinkedIn profile, Page subsequently joined Sentinel as a "VP Business Development" in November 2019. Plaintiffs have recently learned that, once at Sentinel, Page worked on new partnerships with at least three former BlackBerry Customers, each of which appear to have been solicited by Coulter. Based on information and belief, as supported by the timing of their departures, Brown Coulter solicited Page to join Sentinel.

48.    Tymour Saba left Plaintiffs and joined Sentinel around January 2021. When Saba first joined Plaintiffs, he was recruited by Brown Coulter. Based on information and belief, as supported by the circumstances in which Saba was recruited to join Plaintiffs, Brown Coulter also solicited Saba to follow her to Sentinel.

49.    Brown Coulter also participated in the solicitation of Corey White, her husband's former supervisor at Plaintiffs, to provide services to Sentinel. White was the Senior Vice President of Services for Plaintiffs and oversaw the development of CylanceGUARD. After he was no longer employed by Plaintiffs, White started his own business, which was around the same time Coulter left Plaintiffs for Sentinel. In August 2019, Brown Coulter, Coulter, and White formed a group text message in which Coulter and White made plans to meet at BlackHat, an

annual industry conference. While Brown Coulter would not be attending BlackHat, she asked White "How does this week look to connect?" and White provided Brown Coulter with the contact information for his new business venture. Coulter subsequently connected White with his supervisor at Sentinel, Eran Ashkenazi.

50.    In August 2019, Brown Coulter was still a BlackBerry employee. Brown Coulter had full knowledge that White was a former BlackBerry employee. Coulter and Brown Coulter were barred from soliciting former BlackBerry employees by the identical non-solicitation provisions of their agreements with BlackBerry. However, until her May 20, 2022 response to a subpoena from Plaintiffs, Brown Coulter never disclosed this conversation to Plaintiffs in which Coulter and Brown Coulter solicited a former BlackBerry employee in violation of their agreements.

51.    Section 7 of the RCA states in relevant part:

> This agreement shall be construed in accordance with and governed for all purposes by the laws of the state in which Employee resides at the time of the signing of this agreement. Employee and BlackBerry irrevocably agree to submit any claim arising from or otherwise related to this agreement to the exclusive jurisdiction of the state and federal courts of the state in which Employee resides at the time of the signing of this agreement, and irrevocably waive any objection which either may have to the same, including but not limited to any objection for lack of personal jurisdiction. Exh. B.

52.    Brown Coulter resided at 118 Brigham Hill Lane, Essex Junction, Vermont 05452 when she signed the RCA. Under Section 7 of the RCA, Brown Coulter "irrevocably waive[d] any objection" to jurisdiction in Vermont, "including but not limited to any objection for lack of personal jurisdiction." Exh. B.

53.    Brown Coulter signed other agreements that provide for venue within Vermont, including the BlackBerry Employee Confidentiality & Intellectual Property Agreement ("ECIPA") (attached as Exhibit C). Section 3 of the ECIPA provides that "Upon request by

Downs
Rachlin
Martin PLLC                                          15

BlackBerry, and in any event upon conclusion of Employee's employment with or engagement by BlackBerry, Employee shall immediately return to BlackBerry all Confidential Information and BlackBerry Property that is in Employee's possession, power, or control."

54.    Section 9 of the ECIPA states that Brown Coulter "agrees to assist and to co-operate fully with BlackBerry, both during and after [her] employment with or engagement by BlackBerry" and agrees to "sign further documents and do such acts and other things reasonably requested by BlackBerry to . . . assist BlackBerry to obtain . . . protection of . . . [BlackBerry's] Confidential Information, Developments and BlackBerry Property." Exh. C.

55.    On November 29, 2021, Plaintiffs sent a cease-and-desist letter to counsel for Brown Coulter, in which Plaintiffs reminded Brown Coulter of her obligations under her agreements with Plaintiffs and demanded that she immediately cease use of Plaintiffs' confidential information and trade secrets and return all company property including documents, data, and electronic storage devices. Plaintiffs had previously sent a letter to Brown Coulter requesting that she preserve all documents relevant to the suit against Coulter and Sentinel on January 28, 2020.

56.    In the November 29, 2021 letter, Plaintiffs invoked their rights under Sections 3 and 9 of the ECIPA and demanded that Brown Coulter execute an affidavit attesting that she would cease using Plaintiffs' confidential information and trade secrets and return all of Plaintiffs' company property by December 10, 2021.

57.    As of this filing, Brown Coulter has not returned the executed affidavit and has not returned Plaintiffs' company property. She is accordingly in breach of Sections 3 and 9 of the ECIPA.

## COUNT I: BREACH OF CONTRACT

58.    Plaintiffs restate and re-aver each and every allegation contained above, as if fully stated herein.

Downs
Rachlin
Martin PLLC

16

59.     Brown Coulter agreed to and is a party to the Employment Agreement, the RCA, and the ECIPA.  The RCA prohibits Brown Coulter from soliciting for twelve (12) months BlackBerry's Customers with whom Brown Coulter had contact while at BlackBerry that have done business with BlackBerry within the twelve (12) months preceding Employee's last day of work, and prohibits her from using or disclosing BlackBerry's confidential and proprietary information for any purpose, at any time.  Further, Section 4 of the RCA states that, should Brown Coulter breach any provision(s) in Section 1, 2 and 3 of the RCA, the restrictive time period(s) set forth in that/those Section(s) shall be extended by the period of such violation, effectively restarting the restrictive time period(s) for the specific Section(s) with each violation. Brown Coulter's continued violations of Section 1, 2 and 3 of the RCA thus restart the restrictive time period(s) for each.   What's more, the ECIPA further requires Brown Coulter to assist BlackBerry and execute documents in order to protect BlackBerry's confidential information and trade secrets.

60.     Brown Coulter has breached these agreements, causing damages to Plaintiffs.

61.     As a direct and proximate cause of Brown Coulter's breaches, Plaintiffs have suffered damages and irreparable harm and may incur further irreparable harm for which there is no adequate remedy at law.

62.     In addition to monetary and other damages to which they are entitled, Plaintiffs are entitled to the equitable remedy of specific performance, including that Brown Coulter submit for inspection by Plaintiffs any computers, cellular telephones, cloud accounts, and storage devices she may have used to store or access Plaintiffs' electronic data and information.

Downs
Rachlin
Martin PLLC

## COUNT II: BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

63.     Plaintiffs restate and re-aver each and every allegation contained above, as if fully stated herein.

64.     Implicit in each of Plaintiffs' agreements with Brown Coulter is a covenant of good faith and fair dealing.

65.     The conduct of Brown Coulter, including, but not limited to, her bad faith actions in disclosing Plaintiffs' confidential information, including through images uploaded to her shared cloud storage account with Sentinel employee Coulter from June 2019 to September 2019, and in soliciting Plaintiffs' Customers and employees constitutes a breach of the implied covenant of good faith and fair dealing.

66.     Additionally, Brown Coulter breached the implied covenant of good faith and fair dealing when she misrepresented to Plaintiffs in her exit interview that she had made "no decisions on next steps as of this point" despite having already accepted a high-level position with Plaintiffs' direct competitor, Sentinel.

67.     Brown Coulter also made misrepresentations to Plaintiffs to cover up similar breaches by her husband, Chris Coulter.  By misleading Plaintiffs to prevent them from learning about breaches by another employee, Brown Coulter further violated the implied covenant of good faith and fair dealing.

68.     As a direct and proximate cause of Brown Coulter's breaches, Plaintiffs have suffered damages and irreparable harm and may incur further irreparable harm for which there is no adequate remedy at law.

Downs
Rachlin
Martin PLLC

18

## COUNT III: BREACH OF FIDUCIARY DUTIES

69.     Plaintiffs restate and re-aver each and every allegation contained above, as if fully stated herein.

70.     Brown Coulter owed and owes fiduciary duties to Plaintiffs arising from her position as a high-level former employee of Plaintiffs, a position of significant trust.  Specifically, as a former employee of Plaintiffs, Brown Coulter owed Plaintiffs duties to refrain from divulging Plaintiffs' highly valuable and irreplaceable trade secrets and proprietary information to Plaintiffs' competitors, such as Sentinel, and to act with good faith and loyalty for the advancement of Plaintiffs' interests.  Brown Coulter's duties included a duty to disclose conflicts of interest, such as accepting a position with Plaintiffs' direct competitor while continuing to perform work for Plaintiffs.

71.     Brown Coulter has breached her fiduciary duties to Plaintiffs, including by misappropriating Plaintiffs' confidential and proprietary information, by disclosing and/or using Plaintiffs' confidential and proprietary information without Plaintiffs' consent, by continuing to receive confidential and proprietary information and communicate with key customers of Plaintiffs after accepting a position with a competitor of Plaintiffs, by affirmatively and intentionally concealing her new position despite obligations to disclose this conflict of interest, and by otherwise acting not in good faith with and towards Plaintiffs.

72.     As a result of Brown Coulter's breaches of her fiduciary duties, Plaintiffs have incurred damages and irreparable harm and may incur further irreparable harm.

## COUNT IV: CIVIL CONSPIRACY

73.     Plaintiffs restate and re-aver each and every allegation contained above, as if fully stated herein.

Downs
Rachlin
Martin PLLC                                            19

74.     Brown Coulter, Sentinel, and other former employees of Plaintiffs who are now or have been employed by Sentinel entered into a tacit or express agreement to misappropriate Plaintiffs' confidential and proprietary information and to breach Brown Coulter's fiduciary duties to Plaintiffs.

75.     In furtherance of this agreement, Brown Coulter, Sentinel, and other co-conspirators, among other things, solicited Plaintiffs' customers and employees directly or indirectly and misappropriated, used or disclosed Plaintiffs' confidential and proprietary information, Brown Coulter and Coulter made material false and deceptive statements and actions toward Plaintiffs, Brown Coulter breached her fiduciary duties to Plaintiffs, Sentinel aided and abetted her breach of her fiduciary duties, and Brown Coulter, Sentinel, and other co-conspirators made material overt acts together and separately, as described in the preceding paragraphs and otherwise, to further the aims of the conspiracy. The conspirators' actions, including their customer solicitation, employee solicitation, and misappropriation, possession and use of Plaintiffs' confidential and proprietary information, Brown Coulter's breach of her fiduciary duties, and Sentinel's aiding and abetting in this breach, were unlawful.

76.     The conspirators' actions were taken with actual malice such that an award of punitive or exemplary damages are appropriate.

77.     These actions were done for Brown Coulter's benefit. For example, Brown Coulter highlighted her thorough knowledge of BlackBerry's Confidential Information in order to obtain a position at Sentinel. Brown Coulter received the benefit of employment from Sentinel, including compensation, benefits, bonuses and contemplated career promotion, in exchange for her conspiratorial actions, including her use and/or disclosure of Plaintiffs' confidential and proprietary information.

Downs
Rachlin
Martin PLLC

78.    Plaintiffs suffered damages that were directly and proximately caused by Brown

Coulter's unlawful acts.

WHEREFORE, Plaintiffs pray that the Court find in their favor on all counts herein and order the following relief:

a.  Enter an order and permanent injunction restraining and enjoining Brown Coulter from violating the terms of the RCA and ECIPA;

b.  Enter an order and permanent injunction restraining and enjoining Brown Coulter from disclosing and using Plaintiffs' confidential information;

c.  Award Plaintiffs all damages incurred as a result of Brown Coulter's conduct and actions, as well as the actions of her co-conspirators, including lost profits and business opportunities;

d.  Award Plaintiffs restitution as remedy for Brown Coulter's unjust enrichment by her wrongful actions;

e.  Reimburse Plaintiffs all costs and attorneys' fees incurred in enforcing Plaintiffs' agreements with Brown Coulter and in preventing Brown Coulter's further wrongful conduct;

f.  Award Plaintiffs punitive and exemplary damages;

g.  Enter an order providing specific performance and other relief enforcing the terms, conditions, and remedies provided in Brown Coulters' agreements with Plaintiffs, including the production and inspection by Plaintiffs of computers, cellular telephones, cloud accounts, and any other storage devices or accounts that Brown Coulter may have used to store or access Plaintiffs' electronic data and information and return of all such data and information;

h.  All other damages and remedies available to Plaintiffs within the Court's discretion.

Downs
Rachlin
Martin PLLC

Burlington, Vermont.

June 3, 2022

DOWNS RACHLIN MARTIN PLLC

By: /s/ Tristram J. Coffin
    Tristram J. Coffin
    Evan J. O'Brien
    Monica H. Allard
    199 Main Street
    P.O. Box 190
    Burlington, VT 05402-0190
    Telephone: 802-863-2375
    tcoffin@drm.com

ATTORNEYS FOR PLAINTIFFS
BLACKBERRY CORPORATION AND
CYLANCE, INC. D/B/A BLACKBERRY
CYLANCE

Downs
Rachlin
Martin PLLC

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand trial by jury of all triable issues.

Burlington, Vermont.

June 3, 2022

DOWNS RACHLIN MARTIN PLLC

By: /s/ Tristram J. Coffin
    Tristram J. Coffin

ATTORNEYS FOR PLAINTIFFS
BLACKBERRY CORPORATION AND
CYLANCE, INC. D/B/A BLACKBERRY
CYLANCE

21385004.4

Downs
Rachlin
Martin PLLC

23